## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | :: | |
| | :: | **CRIMINAL ACTION FILE** |
| **v.** | :: | |
| | :: | **NO. 1:17-CR-219-01-ELR-AJB** |
| **REGINALD BARBER,** | :: | |
| | :: | |
| **Defendant.** | :: | |

## UNITED STATES MAGISTRATE JUDGE'S ORDER
## AND FINAL REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Reginald Barber's motion to suppress evidence and statements.  [Doc. 44].[1]  For the following reasons, the Court **RECOMMENDS** that the motion be **DENIED**.

## I.    Introduction

Barber is charged in a multiple count indictment with conspiring to distribute a controlled substance (Count 1); distributing a controlled substance (Count 2); possessing a machine gun (Count 3); and possessing a firearm during and in relation

---

[1]    The Government also filed a motion to require a more particularized statement of Defendant's motion to suppress.  [Doc. 75].  The Government had sufficient notice of the grounds of the relief sought by Defendant, [*see* Doc. 83-1].  Therefore, the motion is **DENIED**.

AO 72A
(Rev.8/8
2)

to the drug trafficking crimes charged in Counts 1 and 2.  [Doc. 1].[2]  He moved to

suppress the fruits of a traffic stop on March 1, 2017 and statements that he made to

federal law enforcement officers while he was in the Fulton County Jail on March 15,

2017. [Doc. 44].  The Court held an evidentiary hearing, [Doc. 81 (hereinafter "T__")],

after which the parties filed briefs.  [Doc. 83 (Govt), 92 (Barber), 93 (Govt)].  With

briefing concluded, the motion is ripe for recommended resolution.

## II.     Discussion

Defendant did not address the Government's arguments that it made in its post-

hearing brief, in which the Government argued that law enforcement had probable

cause to stop a vehicle in which Barber was the front seat passenger, T27, 31, and seize

a machine gun and a quantity of crack cocaine.  [*See* Doc. 92 at 4 (standing mute as to

the Government's contentions other than as to law enforcement's March 15, 2017

questioning)].  In fact, Barber agreed that these were the undisputed facts (other than

the inserted footnotes that the Court has included for additional context):

> On March 1, 2017, Atlanta Police Office Crowder, while reviewing a
> camera   system,   observed   a   white   Chevrolet   Impala   at

---

[2]      Defendant was charged along with Barry Bullock in Counts 1
and 2. [Doc. 1].  Bullock pleaded guilty to Count 1.  [Docs. 48, 63].

2

374 Cleveland Avenue in Atlanta[,] Georgia.[3]  Crowder watched a person approach the vehicle, hand something to the driver, who in turn handed something to the front seat passenger, who handed something to the backseat passenger; the front seat passenger returned an object (or objects) to the driver, who handed said object to the person outside of the car.  Of particular interest, Officer Crowder saw what he believed to be a "Mac 10" machine gun in the waistband of the passenger in the front seat.[4]  Crowder's only identification of that front sear passenger initially was that he was a large man wearing rings.  Officer Crowder issued a "be on the look out report" for the Impala.

Atlanta Police Officer Wesley Floyd responded to the report orally to Officer Crowder within 10-15 minutes, and followed the Impala on to I75 north and to I20 east.  Crowder caught up with the officer by car, and the Impala.  Crowder testified that he a rode to the side of the Impala and recognized the driver as the person he saw in the video, and that the passenger in the front seat was wearing rings (like those he saw in the video).  A traffic stop ensued; all of the occupants were detained and arrested.  Mr. Barber was not Mirandized by Crowder at that time.  The firearm that was seen on the video was recovered from the purse of the backseat passenger.  A vial containing crack cocaine was recovered from beneath of the front passenger seat.

[Doc. 92 at 1-2].  As a result of his failing to address the Government's arguments, the Court deems Barber to have abandoned his challenge to the stop of the Impala and the seizure of the firearm and crack cocaine.  *United States v. Cunningham*, 161 F.3d 1343,

---

[3]     This area was known by the police to have a high volume of drug transactions occurring in parking lots of gas stations.  T7-8.

[4]     Crowder was retired from the U.S. Army, where he gained experience with the MAC-10.  T6-7.  From the security camera video, Crowder recognized the weapon as an older model fully automatic weapon.  T19-20.

3

1344 (11th Cir. 1998) (holding that when a defendant fails to offer argument on an issue, that issue is abandoned); *United States v. Salazar-Orellana*, No. 1:09-CR-475-WSD-CCH, 2010 WL 3293343, at *3 (N.D. Ga. June 18, 2010) (deeming motion to suppress abandoned where defendant failed to respond to government's argument), *report and recommendation adopted sub nom. United States v. Salazar-Orellana*, No. 109-CR-475-WSD-CCH-3, 2010 WL 3293341 (N.D. Ga. Aug. 19, 2010).

Even if Barber had not abandoned his motion by failing to address the Government's arguments, his motion to suppress should be denied because probable cause supported law enforcement's seizure of the crack cocaine and machine gun.  In addition to the facts to which Barber agreed were proven, the evidence demonstrates that upon stopping the vehicle (based on reasonable suspicion that the Impala's occupants had been engaged in a drug transaction and that the front seat passenger possessed a machine gun),[5] the driver (Bullock) gave the officers a false name,

---

[5]     *Terry v. Ohio*, 392 U.S. 1 (1968), and the cases which have followed it make clear that "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2000); *United States v. Gordon*, 231 F.3d 750, 754 (11th Cir. 2000); *see also United States v. Lopez-Garcia*, 565 F.3d 1306, 1313 (11th Cir. 2009) ("It is by now well established that a 'law enforcement officer may conduct a brief investigative stop of a vehicle,

4

subjecting him to arrest. T32, 26, 54, 56-57. Bullock also had a suspended driver's license, and none of the occupants of the Malibu (including Bullock) was the registered owner of the vehicle, thus subjecting the vehicle to impound and inventory pursuant to the Atlanta Police Department's policies. T36-37, 57-58. The occupants of the vehicle had been removed from the car, and the officers, not observing the machine gun on Barber's person, searched the vehicle where he had been seated and discovered under the front passenger seat a pill bottle filled with blue plastic baggies containing what appeared to be crack cocaine. T32. An extended ammunition magazine was then observed protruding from a purse on the back seat, and upon further examination, the machine gun was located, seized, and the safety switch was engaged. T33-34, 63-64.

Even if the search of the Impala was constitutionally infirm, which it was not, Barber does not have standing[6] to challenge the vehicle search. Pursuant to *Brendlin*

---

analogous to a *Terry*-stop, if the seizure is justified by specific articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct.' ") (citation omitted).

[6]   The Court recognizes that the Supreme Court disapproves of the use of the word "standing" in describing a legitimate expectation of privacy. *See Rakas v. Illinois*, 439 U.S. 128, 139-40 (1978); *see also United States v. Hawkins*, 681 F.2d 1343, 1344-45 (11th Cir. 1982); *but see Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018) (where the Court noted that the "concept of standing in Fourth Amendment cases can be a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional

5

*v. California*, 551 U.S. 249, 258 (2007), a passenger in a vehicle, such as Barber, has a limited challenge to a warrantless vehicle stop and search of his person.  In *Brendlin*, the Supreme Court held that a passenger in an automobile, stopped as the result of either a traffic offense or based on reasonable suspicion of criminal activity, is seized the same as the driver and may challenge the constitutionality of the stop.  *Id.* at 254, 256-58.  However, although a passenger may challenge the recovery of any evidence off his person or statements made as a result of the stop, he may not challenge any other evidence seized from the vehicle.  *Lewis v. United States*, 491 Fed. Appx. 84, 85-86 (11th Cir. Oct. 1, 2012) (holding that a passenger in a private car, who has no possessory interest in the automobile, does not have a legitimate expectation of privacy in the interior of the automobile, and, therefore, cannot contest the vehicle's search on Fourth Amendment grounds); *United States v. Ubaldo-Viezca*, 398 Fed. Appx. 573, 579 (11th Cir. Oct. 6, 2010) (rejecting defendant's claim that *Brendlin* stood for more than a passenger's right to challenge the stop of a vehicle; "[b]ecause Ubaldo-Viezca was

---

search; but it should not be confused with Article III standing, which is jurisdictional and must be assessed before reaching the merits.") (citation omitted).  However, the undersigned will use the word "standing" when referring to whether Defendant has an expectation of privacy because courts routinely use "standing" as "shorthand for the existence of a privacy or possessory interest sufficient to assert a Fourth Amendment claim."  *United States v. Daniel*, 982 F.2d 146, 149 n.2 (5th Cir. 1993).

AO 72A
(Rev.8/8
2)

merely a passenger and did not own or rent the vehicle, he could not raise a Fourth Amendment challenge to the search of the vehicle"); *see also United States v. Lee*, 586 F.3d 859, 864 (11th Cir. 2009) ("We have held that a 'passenger[ ] in a private car, . . . who has no possessory interest in the automobile, does not have a legitimate expectation of privacy in the interior of the automobile because he does not have the right to exclude others from the car.' ") (citations omitted).

Accordingly, the Court **RECOMMENDS** that Barber's motion to suppress evidence be **DENIED**.

As to his statements, the evidence reflects that on March 15, 2017, two weeks after his arrest, ATF Agent MacLeod and ATF Task Force Officer Ernest interviewed Barber at the Fulton County Jail, where they briefly questioned him following his receipt and waiver of *Miranda* rights.   T83; Govt. Ex. 6.   By the time of the questioning, Barber had been appointed a lawyer in state court, who filed an "Entry of Appearance and Notice of Assertion of Right to Remain Silent and Right to Counsel."[7] Barber asserts that pursuant to *Cervi v. Kemp*, 885 F.2d 702 (11th Cir. 1988), this assertion by counsel rendered any subsequent *Miranda* waiver by Barber ineffective,

---

[7]       Barber's post-hearing brief claims that the notice was attached to the brief, [Doc. 92 at 2 & n.1], but the exhibit was not attached.  Regardless, the recommended result of his challenge to his statements is the same.

and thus his custodial statements were unlawfully obtained.   [Doc. 92 at 4].   *Cervi*'s

holding, that a defendant's invocation of his right to counsel at arraignment invalidates

his subsequent statements made after police initiate questioning even where the

defendant waives his *Miranda* rights, 855 F.2d at 706, is in direct contradiction to the

holding of *Montejo v. Louisiana*, 556 U.S. 778 (2009).   In *Montejo*, the Supreme Court

considered a case with facts similar to the facts presented here.   Montejo was arrested

and brought before a judge for a preliminary hearing.   At the preliminary hearing,

Montejo was appointed counsel. Despite the appointment of counsel and without

notification to Montejo's attorney, police officers visited Montejo and requested that

he accompany them on an excursion to locate the murder weapon.   Montejo eventually

was read his *Miranda* rights and agreed to go along with the officers.   During the

excursion, Montejo wrote an inculpatory letter which was used against him at trial.   The

Court rejected the assertion that "once a defendant is *represented* by counsel, police

may not initiate further interrogation."   *Id.* at 786 (emphasis in the original).   In ruling

that the inculpatory letter could be used against Montejo if he had validly waived his

right to counsel during the interrogation, the Court stated that "[t]he defendant may

waive the right [to counsel] whether or not he is already represented by counsel; the

decision to waive need not itself be counseled. . . .   And when a defendant is read his

AO 72A
(Rev.8/8
2)

*Miranda* rights (which include the right to have counsel present during interrogation) and agrees to waive those rights, that typically does the trick." *Id.* The Court also rejected Montejo's contention that no represented defendant can ever be approached by the state and asked to consent to interrogation. *Id.* at 789.

To the extent that Barber asserts his desire to have counsel present for all government-initiated interrogations was invoked by virtue of his Fulton County attorney's prior invocation on his behalf, the *Montejo* court also rejected that notion. The Court stated:

> "We have in fact never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation' . . . ." *McNeil* [*v. Wisconsin*, 501 U.S. 171, 182 n.3 (1991)]. What matters for *Miranda* [*v. Arizona*, 384 U.S. 436 (1966),] and *Edwards* [*v. Arizona*, 451 U.S. 477 (1981)], is what happens when the defendant is approached for interrogation, and (if he consents) what happens during the interrogation—not what happened at any preliminary hearing.

556 U.S. at 796-97. Hence, this Court concludes that what matters is what happened when Defendant was approached by the ATF while he was in custody, and not what actions his attorney took on his behalf before his "custodial interrogation."

Therefore, the Court **RECOMMENDS** that Barber's motion to suppress statements be **DENIED**.

AO 72A
(Rev.8/8
2)

III.   **Conclusion**

For the reasons stated above, the Court **RECOMMENDS** that Defendant Barber's motion to suppress evidence and statements, [Doc. 44], be **DENIED**.  Also, the Government's motion to require particularization of the motion to suppress, [Doc. 75], is **DENIED**.

The Court now has ruled or recommended a ruling as to all matters referred pursuant to Standing Order 14-01 (N.D. Ga. Aug. 15, 2014).  Further, the Court has not been advised of any impediments to scheduling this case for trial.  Accordingly, this case is **CERTIFIED READY FOR TRIAL**.

**IT IS SO ORDERED, RECOMMENDED, AND CERTIFIED**, this the 19th day of November, 2018.

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

10

AO 72A
(Rev.8/8
2)